and that the answer presented the issue; but, as we think that in this he was mistaken, we cannot, however willing, accord him relief, and, for the purpose of reversing the judgment, take a point which is not presented by a proper exception.

We think, therefore, the judgment must be affirmed, with costs. All concur.

(17 App. Div. 455.)

PENNELL et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   May 7, 1897.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—POWER TO REJECT BIDS.
Consol. Act (Laws 1882, c. 410) § 64, as amended by Laws 1893, c. 327, provides that, immediately after the opening of the bids for a public work, the head of the proper department, unless he shall deem it for the interest of the city to reject all bids, shall notify the lowest bidder to present his sureties to the comptroller for examination, and that the comptroller, after approval of the sureties, shall transmit the same to the head of the department, "who immediately thereafter, if he shall not deem it for the best interests of the city to reject all bids, shall notify said lowest bidder to execute the contract." Held, that the statute requires the head of the department to exercise immediately the right to reject bids after approval of the sureties, and he loses such right by a delay of several months.

2. SAME—APPROVAL OF CONTRACTOR'S BONDS.
The provision of said section 64, that the approval of the comptroller "shall be indorsed on the proposal and the same shall be transmitted by the comptroller to the head of the appropriate department," does not make the approval of the sureties a condition precedent to the award of a contract.

3. SAME—NOTICE TO EXECUTE CONTRACT.
The provision that the head of the department, immediately after receiving the comptroller's approval of the sureties, "shall notify said lowest bidder to execute the contract for said work within five days after receiving such notice," does not require written notice.

Appeal from trial term, New York county.

Action by Joseph B. Pennell and another against the mayor, aldermen, and commonalty of the city of New York, to recover damages for the refusal of defendant to permit plaintiffs to perform a contract. From a judgment for $5,399.64, entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Chase Mellen, for appellant.
L. Laflin Kellogg, for respondents.

PARKER, J.   The judgment awards to the plaintiffs $5,000 as damages, because of the refusal of the defendant to permit them to execute a contract which the plaintiffs claim was awarded to them by the commissioner of public works.   The undisputed facts are that the common council of the city of New York, on the 20th of November, 1894, passed an ordinance for the paving of the roadway of Kingsbridge road, from 190th street to the Harlem river, with Macadam pavement and Telford foundations.   The advertisements for proposals for doing the work were duly published by or under the direction of the commissioner of public works, in pursuance of which the plaintiffs filed a bid

to do the work, together with an agreement and affidavit of sureties as required by law, and deposited a certified check for $2,500, being 5 per cent. of the security required for the faithful performance of the contract. There were several other bidders, but, when the bids were opened by the commissioner of public works, it was ascertained that the plaintiffs were the lowest bidders, and it was so declared. Subsequently their bid was sent to the comptroller for his approval as to the adequacy and sufficiency of the sureties; and on the day following, June 5, 1895, notice was given to the plaintiffs by the comptroller to present their sureties to him for examination. One of the plaintiffs' proposed sureties was out of town, and the comptroller was asked whether he would accept one of the surety companies in place of the absent surety; and, the plaintiffs receiving an affirmative answer, they secured the necessary agreement and affidavits from the American Surety Company, paying it therefor; and thereafter these papers were transmitted by the comptroller to the commissioner of public works, without his formal approval of the sureties. This was about June 18, 1895. Immediately afterwards, the plaintiffs, together with Senator Burns, called upon the commissioner of public works with reference to their bid. As to what took place at that interview and a subsequent one the parties are not in agreement. On the one side, it is claimed that the commissioner of public works announced that he would execute the formal contract in the course of two or three days, and invited the plaintiffs to come to his office for that purpose. On the other hand, the commissioner denies that he ever at any time promised to execute the contract. This difference we will refer to later, the questions to be immediately taken up being whether the commissioner of public works was at liberty to reject all bids, as he did, nearly six months after his alleged promise to execute the contract with the lowest bidder; and, second, whether the notifications required by the statute might be given orally.

The element of fraud or intentional wrongdoing on the part of the plaintiffs or the commissioner of public works is not involved. The bids were honestly made, and the plaintiffs were the lowest bidders. But it seems that in the meantime the Third Avenue Railroad Company had made application for a franchise to extend its line over this road, or some part of it; and this fact came to the knowledge of the commissioner of public works subsequently to the receipt of the bids by him, and his determination that the plaintiffs were the lowest bidders. He offered to execute a contract with the plaintiffs, with a modification which should relieve the city from the paving of one-third of the street in the event that the railroad company should get permission, and should build its road over and along the street. But this modification the plaintiffs refused to accept, for reasons which were apparently well considered. This situation led the commissioner of public works to put off the signing of the contract until the following January, when he rejected all bids.

The city urges on this appeal that, had the commissioner promised to execute the contract, as contended by the plaintiffs, he yet had the right, under the statute, at any time before its formal execution, to reject all bids. Because of the amendment of section 64

of the consolidation act, that section now differs in substantial respects from the form in which it was before this court in the case of Lynch v. City of New York, 2 App. Div. 213, 37 N. Y. Supp. 798. Because of these changes, it is claimed that this case is distinguishable from that. The statute which controlled in that case gave to the commissioner of public works an opportunity to reject all bids, provided he deemed it for the best interests of the city to do so after the bids were opened. But if, instead of exercising the discretion thus conferred, notice was given to the successful bidder that the contract had been awarded to him, the commissioner no longer had the right either to reject the bids or to refuse to execute the contract; and it was held in Lynch's Case that, for his refusal to execute the contract, the plaintiff was entitled to recover his damages.

Section 64 of the consolidation act, as amended, extends the period within which the commissioner of public works may reject all bids. It provides that, "immediately after the opening of the bids, the head of department, unless he shall deem it for the interest of the city to reject all bids, shall notify the lowest bidder to present the persons proposed as sureties to the comptroller for examination within five days after the receipt of said notice." Subsequent provisions relate to the manner of presenting sureties, and the effect of neglect or refusal to do so; and the section then provides that the comptroller, after approval of the sureties, shall transmit the same to the head of the proper department, "who immediately thereafter, if he shall not deem it for the best interests of the city to reject all bids, shall notify said lowest bidder to execute the contract for said work within five days after the receipt of said notice." It will thus be seen that the commissioner of public works, instead of being required, as he was under this section prior to the recent amendment, to determine once for all whether the best interests of the city required a rejection of all bids before the lowest bidder was called upon to present his sureties, is now permitted to consider anew that question after all intermediate steps have been taken, including the approval of the sureties. But then the statute seems to contemplate that he must proceed immediately, and must not postpone action; for it provides in terms that he shall immediately thereafter notify the lowest bidder to execute the contract if he shall not deem it for the best interests of the city to reject all bids. A fair and reasonable construction of that provision requires a prompt exercise of the right of the commissioner to reject all bids, and also that such right is gone after he has notified the lowest bidder to execute the contract. The commissioner of public works in this case did not reject the bid on the 18th of June, when the papers were transmitted to him, and the plaintiffs appeared before him; nor did he attempt to do so until January following. But how promptly he must act is not of moment here, for it is plaintiffs' contention that immediately after the 18th of June the commissioner notified them to execute the contract; and if that fact be true, and the notification was in accordance with the requirements of the statute, then it is our view that his right to reject all bids was at an end.

The point is made that the papers were returned by the comptroller to the commissioner, without his formal approval of the sureties. But that fact in no way defeats or impairs the plaintiffs' right to recover, provided there was an award of the contract. The statute does not make the approval of the sureties by the comptroller a condition precedent to an award. While the comptroller did not formally approve of the sureties, it would seem that his letter was intended, nevertheless, to constitute an approval. Outside of the letter, it appears that, one of the sureties being out of the city, the comptroller was asked to accept a surety company instead, and he assented. His letter to the commissioner transmitting the proposals reads:

"Sir: The proposal of Pennell and O'Hern for paving of Kingsbridge road is herewith returned without my approval of the sureties, for the reason that I am not fully satisfied as to the adequacy and sufficiency of Thornton N. Motley, one of the sureties thereon. Pennell & O'Hern propose, with your consent, to substitute the American Surety Co. as a surety in the place of Mr. Motley. The agreement and affidavits executed by the surety company are accordingly transmitted, for such action in the matter as you may deem proper."

That he intended to have the commissioner of public works understand that, so far as he was concerned, he approved of the substitution of the American Surety Company for Mr. Motley, is beyond question. That he expected the commissioner would take the same view is equally apparent; and that the latter did so can fairly be inferred from the fact that he did not at any time during the long period in which he was trying to find a way to relieve the city from the contract make the point that the sureties had not been approved by the comptroller, from the further fact that he asserted that the only reason why he did not execute the contract was on account of the Third avenue franchise, and from his conceded readiness to execute a contract with such modification as would relieve the city from paving part of the street in the event of the railroad company's building its projected road. This last consideration, indeed, seems conclusive, inasmuch as the objection in regard to the approval of sureties would be equally as applicable to the modified contract as to the contract in its original form.

The next question, then, is whether the plaintiffs have established in this case that they were notified by the commissioner of public works, on or about the 18th of June, to execute the contract within two or three days·thereafter, as contended by them. It is objected that, as no notice in writing was given, it has not been proved that the plaintiffs were notified as required by statute. But, as we read the provision, it is not necessary that the notice should be in writing. The commissioner is required to notify the lowest bidder, but how such bidder shall be notified, whether in writing or orally, is not stated; and it necessarily follows that the commissioner is at liberty to adopt either method. It was therefore competent for the plaintiffs to introduce testimony tending to show that the commissioner of public works orally notified them to execute the contract. And this presents the only question of fact which was in dispute on the trial. The plaintiff O'Hern testified that, accompanied by Senator Burns and his partner, Pennell, he called upon Commissioner Brookfield on the

18th of June, and that a Mr. North, the water purveyor, was with the commissioner.   He further testified, among other things, as follows:

"We saw him at his office in Chambers street, in his office as commissioner of public works.   The senator introduced us to Mr. Brookfield, and we asked the commissioner whether he was ready for us to execute the contract for the Kingsbridge Road; and he then asked for an explanation from Mr. North. Mr. North went on and made a statement to the effect that in his opinion it would not be advisable for the department to enter into a contract just at that time, on account of the railroad tracks that were to be laid in the street, and that the department would have to build on the Kingsbridge road, and the press of New York City would criticise their actions if they went on and laid an expensive pavement, and, in the course of two or three months, to have the road ripped up again, to lay down railroad tracks.   The commissioner replied in these words, saying:  'When did you discover that you were to take this particular course?'   The water purveyor, Mr. North, replied that he must confess that all of those details had been gone through by the old administration, naming Tammany, and that he did not discover that there was to be a franchise sold in that particular street by the city until after the bids had been opened.   The commissioner replied that it was too late, and that there was nothing left for them to do but to execute the contract.   However, he would not enter into the contract that day, but that, if we would come around in two or three days, he would sign the contract with us.   This conversation was in the presence of Senator Burns, Mr. Pennell, and myself, and Mr. North.   We went around in a few days.   Q. What happened then?   A. We called around in the course of two or three days, and the commissioner said that he was ready to execute the contract, provided we could enter into a supplemental agreement, agreeing to wait until the railroad company laid their tracks."

The testimony of this witness authorizes a finding that the commissioner not only decided at that time to execute the contract, but that he notified the plaintiffs, as he was required to do by statute, to come around and execute it, and fixed the time for so doing within the period of five days limited by the statute.   The testimony of Mr. Pennell, the other plaintiff, and of Senator Burns, is to the same effect.   Commissioner Brookfield testified to several interviews with the plaintiffs and Senator Burns; but he insists that he never promised to sign a contract, and asserts that the only reason why he did not execute it was on account of the franchise to the Third Avenue Railroad Company, about which he learned subsequently to the receipt of the bids in accordance with the printed proposals.   The testimony of Mr. North corroborates Commissioner Brookfield to the extent that he says he did not hear the commissioner say that he would execute the contract, while he was present at the first interview between the parties.   From all this testimony a question was presented for the consideration of the jury.   The question was whether the commissioner, having an opportunity to reject all bids or to award the contract, decided to award the contract, and notified the plaintiffs to execute it.   This question the court carefully submitted to the jury.   They answered it affirmatively, and their finding should stand.

It follows that the judgment and order appealed from must be affirmed, with costs.   All concur.