**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**NATIONAL OPTICAL STORES COM-**
**PANY, Defendant-Appellant.**

**No. 17037.**

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1969.

Nathan Ruppa, Norman W. Wegner, Milwaukee, Wis., for defendant-appellant, Ruppa & Wegner, Milwaukee, Wis., and David Charness, Los Angeles, Cal., of counsel.

James B. Brennan, U. S. Atty., Thomas R. Jones, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Pursuant to the statute giving district courts jurisdiction of all civil actions commenced by the United States (28 U.S.C. § 1345), the Government sued National Optical Stores Company, a Wisconsin corporation based in Milwaukee, alleging that it had failed to perform under a contract with the General Services Administration. The defendant filed a counterclaim seeking a return of its bid deposit on certain real and personal property owned by the Government. Summary judgment was entered against the defendant and its counterclaim was dismissed. We affirm.

Early in 1960, the Government sought bids on a former Veterans' Administration Hospital Reservation in Waukesha, Wisconsin. One of the general terms and conditions of the bid invitation, contained in section 6, provided in part:

"The foregoing Invitation with all the instructions, terms, and conditions set forth herein, and the Bid when accepted by the Government, shall constitute an agreement for sale between the successful bidder and the Government."

Section 4 of the terms and conditions specified that all bids were to be considered continuing offers until accepted or rejected by the General Services Administration, but that if a bidder did not receive "notice of acceptance" within 90 days from the opening of the bid, he could consider his bid rejected. It was also provided that the contract made by acceptance of a bid by the General Services Administration was subject to avoidance by either party if the Attorney General determined that the sale would conflict with the antitrust laws. The Government instructed bidders that in the event of a credit sale, as here, "before the award is made to the successful bidder," requested financial data should be furnished to the General Services Administration.

In its bid of March 14, 1960, defendant offered "to acquire from the General Services Administration in accordance with the instructions and under the terms and conditions set forth in the foregoing Invitation," this surplus property. Defendant enclosed a deposit of $23,600. In the letter accompanying its bid, defendant advised: "Should we be the successful high bidder on this property, the deal shall be closed on or about June 30, 1960."

On March 31, 1960, the General Services Administration wrote defendant that its offer of March 14, 1960, "is accepted, subject to approval of credit and antitrust clearance by the Department of Justice." The letter also advised defendant that it would be notified when the antitrust clearance was granted. Nothing was said about any notification of approval of credit.

On April 4, defendant acknowledged the foregoing letter, stating, "This is to acknowledge your letter of the 31st of March of [sic] which you state that my offer was accepted subject to the approval of credit and other clearances." Defendant enclosed two letters supplying financial information.

On July 15, the General Services Administration wrote the defendant about the closing, stating that it had received antitrust clearance from the Department of Justice, and reiterating that "Your offer to purchase the property for the sum of $236,000.00 on credit terms was accepted March 31, 1960." The July 15th letter was of course sent within the "on or about June 30, 1960" deadline specified by defendant for the closing.

In January 1961, defendant failed to complete the next down payment portion of the purchase price and to accept a quitclaim deed and to execute a note and purchase money mortgage, as demanded.[1] Consequently, in May 1962, the Government resold the property. It obtained a lesser price and sued to recover the price difference, less the bid deposit. The defendant counterclaimed to recover the $23,600 it had deposited.[2]

---

1. This was the first rejection of performance by defendant disclosed in the Appendix.

2. Defendant later filed a waiver of any recovery in excess of $10,000.

Defendant's theory was that the Government did not unconditionally accept its bid within the 90-day period provided and that no valid and binding contract was effected. However, the district court held that the Government's letter of March 31, 1960, constituted an acceptance of defendant's bid. Accordingly, judgment was entered in the Government's favor and the counterclaim was dismissed.

The Government's invitation to bid specifically incorporated certain instructions and general terms and conditions. Section 6 of the instructions required financial information to be furnished for sales on credit, and section 11 of the general terms and conditions specified that the contract "made by acceptance of a bid by General Services Administration" could be avoided by either party if the Attorney General determined that the sale might violate the antitrust laws. Section 5 of the general terms and conditions provided that the invitation, with all the instructions and conditions set forth therein, and the bid, "when accepted by the Government, shall constitute an agreement for sale between the successful bidder and the Government."

 Construing these provisions together, it is obvious that the Government was requiring bidders to make their bids subject to the credit data and antitrust conditions. This was clearly understood by defendant, for its bid of March 14, 1960, provided that defendant "offers to acquire [this surplus property] from the General Services Administration in accordance with the instructions and under the terms and conditions set forth in the foregoing Invitation." Thus the two conditions in question were incorporated in the bid itself, and when the Government accepted the bid on March 31, a binding contract was then formed. As stated rather paradoxically

by Professor Corbin, an acceptance may be unconditional even though the acceptor makes a conditional promise (1 Corbin on Contracts § 83 (1960 ed.)). The Restatement of Contracts Second § 60, comment b (Tent. Draft No. 1, 1964), incorporates this rule in the following terms:

"To accept, the offeree must assent unconditionally to the offer as made, but the fact that the offeree makes a conditional promise is not sufficient to show that his acceptance is conditional. The offer itself may either expressly or by implication propose that the offeree make a conditional promise as his part of the exchange. By assenting to such a proposal the offeree makes a conditional promise, but his acceptance is unconditional."

Since defendant's bid promise included the credit data and antitrust conditions and was accepted by the Government, both parties then became bound in accordance with the mutual assent they had expressed. Main Line Theatres, Inc. v. Paramount Film Distributing Corp., 298 F.2d 801, 804 (3d Cir. 1962), certiorari denied, 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807.[3] The Government's letter of March 31st imposed no additional or different terms from those offered and was therefore not a counter-offer. See Shea v. Second National Bank, 76 U.S.App.D.C. 406, 133 F.2d 17, 18–19 (1942).

 Although we have concluded that the Government's letter of March 31 constituted an acceptance, that letter was at the minimum a "notice of acceptance" within section 4 of the general terms and conditions, so that the bid was not rejected by the Government's failure to notify the defendant of antitrust clearance until July 15, 1960, which was a month beyond the 90-day period specified in section 4 but within the closing deadline

3. Defendant acknowledges that federal common law is controlling and has cited no Wisconsin cases. Therefore, it has been unnecessary to review the Wisconsin law on this subject. The Uniform Commercial Code was not enacted in Wisconsin until 1963, effective in 1965, so that we need not consider the effect of Section 2–207 thereof, on which the Government relies. Cf. United States v. Wegematic Corporation, 360 F.2d 674, 676 (2d Cir. 1966).

suggested by defendant. Our conclusion that "notice of acceptance" contemplates notice sufficient to toll the 90-day limit imposed by section 4 but does not require full and formal acceptance within that period is reinforced by the language of section 6 of the instructions, which provides for furnishing financial information "before the award is made to the *successful* bidder" (emphasis added). A "successful" bidder must be one who has received notice that his bid was the highest submitted; one in this position does not need the benefit of a 90-day limitation designed to protect the interests of bidders who have no way of knowing whether the Government has selected their bids.

Affirmed.