**CRENSHAW COUNTY HOSPITAL BOARD, Plaintiff-Appellee,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellant.**

No. 26782

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

April 25, 1969.

W. Sidney Fuller, Tipler & Fuller, Andalusia, Ala., for defendant-appellant St. Paul Fire & Marine Ins. Co.

Thomas W. Thagard, Jr., Goodwin, Smith & Bowman, Montgomery, Ala., Alton L. Turner, Turner & King, Luverne, Ala., for plaintiff-appellee Crenshaw County Hospital Board.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal is from a judgment in the amount of $10,000 (the maximum

**214**

amount recoverable under a bid bond) in favor of Crenshaw County Hospital Board, a participant in federal Hill-Burton funds, for damages sustained by it as the result of appellant's alleged breach of the bond conditions.[1] The bond, furnished by appellant St. Paul Fire and Marine Insurance Company as surety for Waller Construction Company, provided for payment to the Hospital Board in the event of a contract award to, and subsequent failure to perform by, its principal.

The Hospital Board advertised for public bids in connection with certain construction work. The bid invitation announced that the lowest bid made by a responsible bidder would be accepted, and restricted withdrawal of bids for a period of thirty days after their having been opened. Waller Construction Company submitted its bid in the sum of $285,837.50. The bid opening was attended by W. A. Waller, one of the partners of the construction company. Waller's bid, which was $24,793.50 below the next bid, was announced by the Board to be the low bid. Two Board resolutions were passed accepting the bid of Waller and awarding to it the construction contract. On the following day these resolutions were signed by the Board Chairman and mailed to Waller. In the interim, Mr. Waller discovered that a $35,000 error had been made in the amount of the bid offer as the result of an inadvertent clerical mistake. He informed the Chairman of the Hospital Board of the error that same evening by telephone, requesting that his offer be rejected, and confirmed this by letter the following day. The Hospital Board considered Waller's request but later declined it upon advice of the Director in charge of allocating Hill-Burton funds in Alabama that the Federal Government could furnish a pro rata of the construc-

tion cost on the basis of the lowest bid only. Consequently, the Board declined to release Waller from its offer. Waller failed to perform, and the contract was awarded to the next low bidder. The Board then initiated this action against Waller's surety for breach of contract, claiming the difference between the amount shown in the Waller bid and the higher amount it was obliged to pay as a result of Waller's failure to perform, subject to the limitation contained in the bond of $10,000.

Although the District Court specifically found that the bid was entered into in good faith, that the error was inadvertent, committed without gross negligence, and promptly communicated to the Board, it nevertheless held that there was a breach of contract. We affirm.

At the trial the insurance company argued that Waller's request to be excused from the contract was not tantamount to rejecting the contract and that the company stood ready to perform once the formal contract was tendered. The District Court rejected this contention, however, and found that Mr. Waller's conduct and remarks to the Board Chairman that the company "was not able to do, and could not do, the construction for the price of the bid which it had submitted" constituted a breach of the conditions of the bond sued on, which breach was subsequent to acceptance by the Hospital Board of the Waller bid.

The resolution adopted by the Board on the day of the bid opening states in pertinent part:

"BE IT FURTHER RESOLVED THAT, Mr. S. T. Windham is hereby authorized to execute said contract after final approval of the project by the State Board of Health and the U. S. Public Health Service and upon official notification thereof from the Bureau of Health Facilities Construction,

---

1. Pursuant to new Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the Clerk to place the case on the Summary Calendar and to notify the parties in writing. See Floyd v. Resor, 5 Cir., 1969, 409 F.2d 714; Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804.

Alabama State Department of Public Health."

Appellant contends that there was no binding contract inasmuch as acceptance by the Hospital Board of Waller's bid was conditional only, acceptance thereof being predicated upon final approval of the public health agencies, which approval was not forthcoming until approximately three weeks subsequent to Waller's alleged refusal to perform. Appellant urges, as it did at the trial, that under these circumstances the case is controlled by our holding in Peerless Casualty Company v. Housing Authority, 5 Cir., 1955, 228 F.2d 376. The District Court found the *Peerless* case to be inapposite. We agree with the District Court's analysis in distinguishing the two sets of fact.

In *Peerless*, starting with the common law premise that "an offer may be withdrawn at any time before it is accepted," thus aborting the creation of a binding contract, we held that a condition of approval of the Public Housing Administration which was annexed by an offeree to its attempted acceptance had the effect of delaying that acceptance, and that the withdrawal of the offer prevented a subsequent attempted acceptance from creating a contract. Id. at 378, 379. In *Peerless*, a bid bond for construction work had been entered into between Ivey, a building contractor, and its surety Peerless Casualty Company. The Housing Authority of Hazelhurst, Georgia, advertised for bids and stipulated therein that no bid was to be withdrawn without its consent for a period of thirty days subsequent to the opening of bids. Ivey's bid was low, and a motion was adopted by the local Authority to accept the bid. On the same night a clerical mistake was discovered by Ivey which had resulted in the submission of a bid lower than intended. On the following day he sent a telegram to the local Authority advising of the error. There, however, the factual similarity between the two cases ends. In reversing a verdict directed in favor of the

Housing Authority, we found that there was no enforceable contract because *acceptance of the bid* was subject to approval of another agency. The resolution was to award the contract to Ivey "subject to the approval of the Public Housing Administration," which agency subsequently approved the acceptance.

In the instant case, the bid was unconditionally accepted by the Board. Subsequent approval by the other agencies of the *"project"* was a formality insofar as the contract between the parties was concerned.

■■ We are not persuaded by appellant's "equitable" defense based on the District Court's findings of good faith and a promptly communicated, inadvertent error committed without gross negligence. While it is true that Alabama recognizes an equitable exception to the general rule that a unilateral error does not avoid a contract, where excessive hardships flow to the party responsible for an error, nevertheless, rescission based on such a mistake may be had only where no prejudice results to the other party. Ex Parte Perusini Const. Co., 1942, 242 Ala. 632, 7 So.2d 576, 578. A review of the evidence substantiates the District Court's finding that Waller's failure to perform in accordance with its bid resulted in damage to the Hospital Board in at least the amount sued for. Equity will also step in where a party through mistake names a consideration entirely disproportionate to the value of the subject involved and the other party is cognizant of the mistake. Townsend v. McCall, 1955, 262 Ala. 554, 80 So.2d 262, 266; Board of Water & Sewer Com'rs of City of Mobile v. Spriggs, 1962, 274 Ala. 155, 146 So.2d 872, 876. The consideration named by Waller was not out of all proportion to the value of the subject. It was $27,000 in excess of the projected cost of the job. An expert who had supervised more than three hundred hospital projects testified that there was not an unusual disparity between the Waller bid

and the next lowest bid.[2]  Also it appears that Waller had figured $25,000 profit in the job and that some of the subcontractors had offered to cut their prices to help him out of his difficulty. Thus to enforce the contract as made was not unconscionable.   Townsend v. McCall, supra; Board of Water & Sewer Com'rs  of City of Mobile v. Spriggs, supra;  Ex Parte Perusini Const. Co., supra.

Affirmed.

2.  Compare Townsend v. McCall, 1955, 262 Ala. 554, 80 So.2d 262, in which the estimated cost of the project was $350,-000, the bid of the contractor claiming justifiable mistake was $183,000 and the next lowest bid was $356,000.