**STATE of Alaska, Appellant,**

v.

**Roy Gus JOHNSON, d/b/a Alaska Petroleum, Appellee.**

No. S–2987.

Supreme Court of Alaska.

Aug. 18, 1989.

Rehearing Denied Sept. 12, 1989.

William F. Cummings and Jack B. McGee, Asst. Attys. Gen., and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

James A. Parrish, Parrish Law Office, APC, Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

This case involves a dispute between the State of Alaska and a contractor who submitted a bid to supply diesel fuel to the state's ferry fleet. The case raises issues of contract formation under the competitive bidding procedure established by the state.

I.

The State of Alaska solicited bids for a contract to supply diesel fuel to the Alaska Marine Highway System (AMHS) in Seattle, among other places. The bids were to be stated in terms of their relationship to "OPIS," a fluctuating benchmark price. The bid invitation permitted the state to

---

**8.** *See supra* notes 1 and 2.

"reject any and all bids ... whenever such rejection or waiver is in the best interest of the state," and provided that the contract "[a]ward will be made ... to the lowest responsible bidder."

Texaco was the initial low bidder for Seattle. On December 26, 1985, the state mailed all bidders a bid abstract which showed Texaco as the "apparent low bidder" and notified other bidders of their right to appeal the award.

Texaco had bid OPIS minus $.005/gallon but had inserted payment terms inconsistent with the invitation to bid. On December 31, 1985, appellant Alaska Petroleum (AP) appealed the award pursuant to the state's appeal procedure. The state found Texaco's bid to be nonresponsive. AP was the next lowest bidder, having bid OPIS plus $.0292/gallon. The state's contracting officer, Walt Harvey, wrote a letter to AP on January 8, 1986, stating that AP was the "apparent low bidder," that AP must furnish proof of insurance so that the state could determine AP's "responsibility as a bidder," and that "[u]pon receipt of your certificate of insurance, a final notice of award of contract will be issued."

On January 14, Eleanor Andrews, Commissioner in the state's Department of Administration, wrote AP. Ms. Andrews informed AP that, pursuant to AP's objection to the award to Texaco, Texaco's bid had been "declared nonresponsive." Since AP was "the next lowest bidder ..., nothing could be accomplished by proceeding with a hearing." The letter thus stated that the "Division of General Services and Supply will be contacting you to make the contract award."

AP sent the state the desired insurance certificates in a timely manner. The final notice of award was not forthcoming however. After Harvey's letter to AP, AMHS had reviewed AP's bid and requested the state to cancel all bids and rebid the contract. AMHS, which was buying fuel at almost $.07/gallon less than AP's bid, argued that the cost of fuel under AP's bid would exceed their fuel budget by over $200,000 and that better offers could be obtained on rebid.

AP learned of AMHS' position. By letter to the Attorney General's office, AP objected to the rebidding of the contract. Further correspondence ensued but no bid abstract was ever issued showing AP as the low bidder and no contract was ever signed.

After the initial bids had all expired, the state invited new bids.[1] AP did not bid, believing that a contract between it and the state had been formed in the course of the earlier correspondence.

AP filed a contract claim against the state in superior court in February 1987. Both parties moved for summary judgment. The trial court, Judge Mary E. Greene presiding, granted AP's motion as to liability, ruling that a contract had been formed and that the state had breached it. Trial was held on the question of damages. Finding that AP had been damaged in the amount of $143,632.13, the court awarded that amount plus interest, costs and attorney's fees. The state appeals.

## II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party has shown that it is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c); *McGee Steel Co. v. State ex rel. McDonald Indus.*, 723 P.2d 611, 614–15 (Alaska 1986); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). Here, neither party contends that a material fact is in dispute. This court thus reviews independently

---

1. After the bids expired but before inviting new bids, the state invited AP to "renew" its bid. We do not reach the question because AP did not renew its bid, but we note that this quite probably runs afoul of the requirement that the contract be let under competitive bidding procedures. *See McKinnon v. Alpetco Co.,* 633 P.2d 281, 287–88 (Alaska 1981); *Mulcahy v. Board of* *Educ.,* 25 Ohio App. 492, 159 N.E. 324, 325 (1925); *McIntosh Rd. Materials Co. v. Woolworth,* 365 Pa. 190, 74 A.2d 384, 390–91 (1950); *Platt Elec. Supply, Inc. v. City of Seattle,* 16 Wash.App. 265, 555 P.2d 421, 426–27 (1976); 64 Am.Jur.2d *Public Works and Contracts* § 80 (1972).

whether the law was properly applied to the undisputed facts. *See Peterson v. Wirum*, 625 P.2d 866, 871–72 (Alaska 1981).

The state contends that it never accepted AP's bid. The state argues that the January letters from Harvey and Andrews to AP did not operate as acceptances or constitute promises to contract in the future. AP, on the other hand, argues that one or both of these letters did constitute an acceptance, and that AP's subsequent proof of insurance satisfied the only condition to the enforcement of the contract. AP also contended at oral argument that since AP was the second lowest bidder for Seattle, the elimination of Texaco as the low bidder was all that was required for the formation of a contract.

An agency's "solicitation of bids is not an offer, but rather a request for offers; no contractual rights based on the content of a bid arise prior to its acceptance by the agency." *King v. Alaska State Hous. Auth.*, 633 P.2d 256, 261 (Alaska 1981). *See also Mottner v. Town of Mercer Island*, 75 Wash.2d 575, 452 P.2d 750, 752 (1969). The bid "is the offer (by the contractor) [,] and a contract comes into being upon its acceptance by the government." *State v. ZIA, Inc.*, 556 P.2d 1257, 1261 n. 12 (Alaska 1976) (citing B J. McBride and I. Wachel, *Government Contracts* § 10.10, at 10–12, 10–13, 10–33 (1973)).

Determining whether an acceptance has occurred is an objective inquiry. "A party cannot rely on its subjective intent to defeat the existence of a contract if its words and actions objectively and reasonably led another to believe a contract had been en-

tered." *Zeman*, 699 P.2d at 1281. *See Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164, 1167 (Alaska 1979) ("agreement to a contract may be imputed based on the reasonable meaning of a party's words and acts").

The issue is thus whether the state's letters and conduct reasonably indicated that it intended to accept AP's offer and thereby form a binding contract. The numerous cases dealing with the awarding of public contracts do not establish a bright line rule as to how and when a public body accepts a bid and becomes bound.[2] Much of the divergence in the case law is due to the varying statutes and bid invitations. The statutes and bid invitation documents constitute the primary guidelines for the parties and the court. Here, we consider the bid abstract sent to AP in December 1985 (showing Texaco as low bidder) in addition to the statute and bid invitation, since this abstract should have shaped AP's reasonable expectations.

At the time in question, AS 37.05.240 provided for the award of competitively bid contracts to the "lowest responsible bidder," established criteria for determining responsibility, and allowed for the cancellation of the "solicitation for bids before the award upon a written finding which specifies the relevant facts that it is in the state's best interest." The statute also stated that an "aggrieved bidder may within five days after an award of contract appeal to the department for hearing, with notice to interested parties, for redetermination and final award in accordance with law."[3] Consistent with AS 37.05.240, the bid abstract received by AP in late Decem-

---

2. Cases finding a contract formed prior to final administrative approval of required bonds or prior to execution of a final written contract include *McIntosh Road Materials v. Woolworth*, 365 Pa. 190, 74 A.2d 384 (1950); *Crenshaw County Hospital Board v. St. Paul Fire & Marine Insurance Co.*, 411 F.2d 213 (5th Cir.1969); and *United States v. National Optical Stores*, 407 F.2d 759 (7th Cir.1969). Cases finding no contract in similar situations include *McRae v. Farquhar & Albright Co.*, 168 Ark. 38, 269 S.W. 375 (1925); *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 479 P.2d 875 (1971); *State ex rel. Cleveland Trinidad Paving Co. v. Board of Public Service*, 81 Ohio St. 218, 90 N.E. 389 (1909); *Chilli v. School District*, 334 Pa. 581, 6

A.2d 99 (1939); and *Morganstern Electric Co. v. Borough of Coraopolis*, 326 Pa. 154, 191 A. 603 (1937). *Cf. Pennell v. Mayor of New York*, 17 App.Div. 455, 45 N.Y.S. 229 (1897). *See generally* Annotation, *Public Contracts: Authority of State or Its Subdivision to Reject All Bids*, 52 A.L.R. 4th 186 (1987); Annotation, *Revocation, Prior to Execution of Formal Written Contract, of Vote or Decision of Public Body Awarding Contract to Bidder*, 3 A.L.R. 3d 864 (1965); 64 Am.Jur.2d *Public Works and Contracts* §§ 63–81 (1972).

3. Former AS 37.05.240(a), in effect on the dates in question, provided:

ber 1985 stated that an aggrieved bidder could appeal the "award(s) stated hereon" within five days.[4] The abstract proclaimed itself the "final notice of award of contract ... if no appeal ... is received from an aggrieved bidder." The abstract went further, however. The abstract would also lose its status as final notice of award if the state "subsequently" issued an amendment to it. Thus, the apparent low bidder was "instructed not to proceed until an appropriate purchase order or contract document" was executed.

We believe that a fundamental object of the statute, bid abstract and invitation to bid should be to create reasonable expectations as to how and when award occurs. Just as there is only one acceptance of an offer, there is only one award of a contract. *See ZIA*, 556 P.2d at 1261 n. 12. AS 37.05.-240 speaks of award and "final" award, and indicates that award occurs at the point that the five day appeal period begins, i.e., the date the abstract is issued. The bid abstract proclaims itself the "final

notice of" the awards "stated hereon" and "indicated," but attempts to further postpone the point of award by reserving the right to amend the abstract and by instructing the low bidders not to proceed without a written contract. There is tension between the statute and the abstract as to when award occurs, and we believe they fail to achieve their fundamental objective of creating clarity as to when a contract is formed.[5]

We need not address whether the state's abstract violates the statute's dictates, however. AP does not argue that an award to it occurred upon issuance of an abstract, and the state does not argue that an award could not occur prior to the execution of a written contract. The narrow question before us is whether a contract was awarded to AP prior to the issuance of a bid abstract showing AP as the low bidder.

The state argues that neither of the letters from Harvey or Andrews was suffi-

*Award of contracts and purchases.* (a) Except as otherwise provided in AS 37.05.230, a contract or purchase made by or under the supervision of the department for which competitive bids are required shall be awarded to the lowest responsible bidder. The department shall determine the responsibility of the bidder based upon the bidder's (1) adherence to the bid specifications, (2) proposed terms of delivery, (3) compliance with state laws, (4) performance record, (5) financial capability, and (6) compliance with conditions imposed in the solicitation for bids. The purchasing agent may cancel the solicitation for bids before the award upon a written finding which specifies the relevant facts that it is in the state's best interest. However, if the purchasing agent makes the contract or purchase after the solicitation for bids is cancelled, the purchase or contract shall be made in accordance with AS 37.05.230(2). Before the awarding of a contract for a building or the making of repairs upon a building, the department shall see that the bids conform with plans and specifications approved by the Department of Transportation and Public Facilities. All bids with the names of the bidders and the amounts of the bids, together with all documents pertaining to the award of a contract, shall be made a part of a file or record and retained by the department for three years, unless reproduced by microfilming and these files or records are open to public inspection at all reasonable times. An aggrieved bidder may within five days after an award of con-

tract appeal to the department for hearing, with notice to interested parties, for redetermination and final award in accordance with law.

4. The relevant portion of the bid abstract stated:

The figures shown hereon are a tabulation of bids received with the apparent low bidder indicated. This abstract of bids and summary of award(s) is final notice of award of contract(s) if no amendment is subsequently issued by the State and if no appeal of the award(s) stated hereon is received from an aggrieved bidder during the five days following the date of this abstract, Saturdays, Sundays and other legal holidays excluded. Any Bidder for which award is indicated is hereby instructed not to proceed until an appropriate purchase order or contract document has been issued by the State. AS 37.05.240.

5. The current statutory scheme offers some clarification by providing in AS 36.30.170, Contract award after bids, that "(a) ... the procurement officer shall award a contract ... by written notice to the lowest responsible and responsive bidder," and by providing in AS 36.30.365, Notice of intent to award a contract, that at "least 10 days before the formal award of a contract ... the procurement officer shall provide to each bidder or offeror notice of intent to award a contract." The modification of "award" with the word "formal" does not promote clarity, however. An acceptance, whether formal or informal, creates a contract.

ciently definite to operate as acceptances. The state argues that both letters speak of future actions which will constitute "final award," and clearly indicate that the state retained its discretion to reject any and all bids. Further, the state contends that no acceptance could occur until other bidders had had an opportunity to appeal AP's award.

While it is true that a valid acceptance must indicate an intent to be presently bound, "an acceptance may be unconditional [and therefore binding] even though the acceptor makes a conditional promise." *United States v. National Optical Stores*, 407 F.2d 759, 761 (citing 1 A. Corbin, *Corbin on Contracts* § 83 (1960)). Given the abstract's status as the "final notice of award . . . if no appeal" is taken, we think that acceptance by the state subject to a condition subsequent could have been within the realm of reasonable expectations.

We hold, however, that the letters from Harvey and Andrews could not give rise to a reasonable belief that the state had accepted AP's offer. AP had received the initial bid abstract, had read it, and had successfully appealed the award to Texaco. The abstract clearly stated that the apparent low bidder should not proceed without an "appropriate . . . contract document," and indicated that the state reserved the option to issue a subsequent "amendment." The letter from Harvey requested insurance documents, which indicated that the state was yet to complete its determination of AP's "responsibility," and stated that a final notice of award would be issued thereafter.[6] The letter from Andrews, while indicating that no hearing was necessary to establish that AP was the next lowest bidder, also indicated that a different depart-

ment would be contacting AP to "make the contract award."

The foregoing may have given AP good reason to be confident that it would soon receive the award, but there was no basis for a reasonable belief that the state could not exercise its discretionary analysis of the state's best interests at least until the bid abstract was issued. The statute provided for an aggrieved bidder's appeal within five days of award, and allowed the state to cancel the solicitation in the state's best interest any time "before the award." The bid abstract itself reserved to the state the right to amend the award, and began the running of the five day appeal period.[7] Thus, the award could reasonably have been perceived as occurring upon issuance of the abstract.

The earliest point at which AP would have had a reasonable basis to believe that its offer had been accepted, although subject to conditions subsequent, was when an abstract showing it as apparent low bidder had been issued. No such abstract was issued here. Therefore, AP could not have reasonably believed that the state had accepted its offer.

We find no merit to AP's suggestion that a contract was formed once Texaco's bid was found unresponsive and AP was the next lowest bidder. Not only does the state's "responsibility" analysis as to AP begin anew after that point, but the state would also need a reasonable period within which to determine its "best interests" in light of the new bid.

Nor do we find merit in AP's contention that the letters from Harvey and Andrews constituted a promise to contract in the future which AP accepted by sending its insurance certificate. At best, Harvey's

6. The determinations of "responsibility" and the state's "best interests" are largely committed to the discretion of the contracting agency. *See Kelly v. Zamarello*, 486 P.2d 906, 912 (Alaska 1971); *People ex rel. Shay v. McCormack*, 167 App.Div. 854, 153 N.Y.S. 808, 810 (1915); *Cleveland Trinidad Paving*, 90 N.E. at 391; Annotation, *Public Contracts: Authority of State or Its Subdivison to Reject All Bids* 52 A.L.R. 4th 186 (1987); 64 Am.Jur.2d *Public Works and Contracts* §§ 67–74 (1972). Where this discretion has not been clearly exhausted, a bidder would

lack reasonable grounds for a belief that its bid had been accepted.

7. Given our holding, we need not address whether the state exceeds the authority granted by the statute by reserving the right to amend the award after the abstract is issued. In other words, the statute may have required that the state make a final determination of its own "best interests" in light of the low bid prior to issuing an abstract.

letter bound the state to inspect the documents and determine AP's responsibility. The letter did not limit the state's right to protect its best interest, and the letter reasonably indicated that the final issuance of the notice of award was the critical event in terms of contract formation.

We thus hold that AP could not, on the basis of the Harvey and Andrews letters, reasonably believe that the state had exhausted its discretion prior to the issuance of a bid abstract. That was the earliest point at which it would have been reasonable to believe that the state could no longer reject bids in the state's best interest. Since no such abstract was issued here, the trial court erred in holding that a contract between AP and the state had been formed.

Our disposition of this issue disposes of the parties' other arguments. The superior court's judgment is REVERSED and REMANDED with instructions to dismiss AP's contract claim.