**SAFECO INSURANCE COMPANY of America, Plaintiff–Appellant,**

v.

**CITY OF WHITE HOUSE, TENNESSEE, a Municipal Corporation, Defendant–Appellee.**

No. 93–5898.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1994.

Decided Oct. 3, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 10, 1994.

**542**

Alfred H. Knight (argued and briefed), Alan D. Johnson (briefed), Willis & Knight, Nashville, TN, for plaintiff-appellant.

Charles H. Warfield, Farris, Warfield & Kanaday, Nashville, TN, Robb S. Harvey (argued and briefed), Tuke, Yopp & Sweeney, Nashville, TN, for defendant-appellee.

Before: KENNEDY, RYAN, and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

In this declaratory judgment action, Safeco Insurance Company of America appeals summary judgment holding it liable as surety on a performance bond for damages incurred by the City of White House, Tennessee, resulting from Eatherly Construction Company's alleged breach of a construction contract. In this appeal, we must decide whether the district court properly exercised jurisdiction over this case, and, if so, whether the district court erred in concluding that Eatherly and the City had entered into a contract and that Eatherly breached that contract by subsequently withdrawing its bid.

We conclude that the district court did have subject matter jurisdiction over the case, and we affirm the district court's conclusion that a binding contract existed between Eatherly and the City. However, we hold that there is a genuine issue of material fact precluding the grant of summary judgment on the issue of breach, so we reverse and remand.

## I.

This case arises out of Eatherly Construction's "withdrawal" of its winning bid for the construction of a sanitary system for the City of White House, Tennessee. In 1987, the City solicited bids from contractors to build a municipal wastewater treatment facility. The City informed contractors bidding on the job that the project was being funded in part by the Environmental Protection Agency and that the EPA required contractors working on EPA funded projects to make an effort to ensure that small, minority, and women's businesses (so-called MBE's) were employed as sources for supplies, equipment, and services. One document in the bid specifications provided:

> It is the policy of the Environmental Protection Agency (EPA) to require its grantees to award a fair share of subagreements to small *and* minority *and* women's businesses on contracts an[d] subagreements performed under EPA construction grants. This requirement is contained in 40 *Code of Federal Regulations* Part 33 Section 240.

The bid specifications stated further that the low bidder must forward to the City, no later than ten days after the bid opening, documents reflecting compliance with the EPA's equal opportunity policy. In addition, the specifications provided that no bidder could withdraw its bid within 90 days after the actual date of opening so as to allow the City to complete its financing arrangements.

Eatherly submitted the lowest bid at $2,643,749.10 and the City accepted the bid on March 19, 1987. Eatherly and the City executed an agreement on April 16, 1987. As required under the agreement, Eatherly furnished a performance bond payable to the City issued by Safeco, Eatherly's surety. In both Eatherly's bid proposal and in the agreement ultimately executed, Eatherly agreed to perform all work in conformance with the "Contract Documents" found in the bid specifications, including the EPA's equal opportunity policy. Eatherly understood that the City's acceptance of its bid was contingent upon approval of the government

agencies involved, namely the EPA. Moreover, Eatherly worked on EPA funded projects in the past and understood that EPA's approval depended on, among other things, EPA's determination of the contractor's good faith effort to employ minority subcontractors on the projects.

Under the terms of the bid specifications, the low bidder was required to submit documents concerning compliance with the EPA's equal employment opportunity within ten days of the bid opening. On March 19, 1987, Eatherly delivered some documents to White–Taylor–Walker, the engineering firm handling the project for the City, but none of the documents contained information about minority business enterprises. White–Taylor forwarded the documents to the EPA and instructed Eatherly to contact the EPA directly to discuss Eatherly's compliance with the EPA's requirements.

On March 30, 1987, Eatherly mailed a form letter to ten MBE's inviting them to bid on the project; Eatherly received no response to these letters. Eatherly contended that there was no minority company in the Middle Tennessee area that was qualified to do the work and claimed that it had no choice but to subcontract the work to a nonminority subcontractor. Eatherly never secured an agreement with a minority subcontractor to work on the project.

The City grew concerned about Eatherly's failure to secure minority participation in the project, and on June 8, reminded Eatherly in a letter that it must comply with the EPA's requirements:

> As you know, no work order can be issued authorizing the commencement of work until you are able to satisfy your company's requirements to meet the EPA Minority Business Enterprise requirements....
>
> The City is anxious for you to give this matter your closest attention so that a starting date can be announced at the earliest possible time.... [I]t would appear that basically all [the EPA] needed was a confirmation that you have done what is necessary to meet the EPA requirements.

Eatherly responded to the City's letter stating that if it did not have an "unconditional contract" with the City, it was "withdrawing" its bid. Eatherly met with the City on June 17 and confirmed that it was withdrawing its bid.

Subsequently, the EPA instructed the City that since Eatherly failed to comply with federal regulations regarding minority subcontractors, the City should award the contract to the second lowest bidder. The City awarded the contract to Moore Construction Company. Moore obtained EPA approval and completed the work for its bid of $2,998,029.56 plus $20,000 for an increase in the price of materials between the bid date and the contract date.

In July 1987, the City claimed that Eatherly committed an anticipatory breach by withdrawing its bid (on June 17) and made a demand upon Safeco to pay, as surety for Eatherly, the amounts provided for in the performance bond that Eatherly furnished to the City. In November 1987, Safeco filed this declaratory judgment action in federal court premised on diversity of citizenship, naming Eatherly and the City as defendants, and seeking a declaration as to its liability to the City under the bonds which Safeco issued in connection with Eatherly's bid for, and the City's award of, the construction contract. The City filed a counterclaim against Safeco as surety, and a cross-claim against Eatherly for breach of contract.

The City moved for summary judgment against Safeco and Eatherly on the ground that the City entered a contract with Eatherly and that Eatherly committed an anticipatory breach of the contract when it withdrew its bid. Eatherly filed a cross-motion for summary judgment, arguing that no contract existed. The district court referred the motions to a magistrate judge, who recommended that the City's motions be denied because, although there was a contract between the City and Eatherly, there were disputed issues of fact as to whether Eatherly had complied with its obligation under the contract and the EPA's regulations. In addition, the magistrate judge recommended that Eatherly's motion be denied and that its cross-claim against the City be dismissed because there was, as a matter of law, a valid contract between the City and Eatherly.

The district court adopted this recommendation in whole and Eatherly applied for an interlocutory appeal, which this court denied on November 15, 1990.

Shortly before trial, Eatherly moved to realign the parties and to dismiss the case for lack of jurisdiction. Eatherly argued that its interests and those of Safeco were identical, and that with Eatherly—a partnership with Tennessee citizenship—on one side of the case against the City—a Tennessee municipal corporation—on the other, complete diversity would be lost. The district court granted the motion in part. It held that Safeco and Eatherly indeed had identical interests and should be aligned on the same side of the case in opposition to the City. But because Eatherly and Safeco had identical interests and no claim was left pending against Eatherly, the district court concluded that Eatherly was a dispensable party and granted the City's motion to dismiss Eatherly from the case, thus retaining diversity jurisdiction.

Eatherly then filed an action in Tennessee state court against the City and Safeco. Safeco moved to stay or dismiss the federal case on abstention grounds, but the district court denied its motion on the ground that the state court action was nothing more than an attempt to relitigate the federal court's findings that the agreement was enforceable. The City then moved for summary judgment on the grounds that: (1) the district court had already concluded that Eatherly and the City had a contract; (2) there was no factual issue regarding breach because Eatherly withdrew its bid after it had been accepted; and (3) damages could be ascertained by stipulation. The district court granted the motion and entered judgment against Safeco in the amount of $560,205.11, that is $352,847.08, the cost of substitute performance, plus $207,358.03 in prejudgment interest. The district court also awarded the City costs and attorney fees under a hold harmless clause in Safeco's performance bond.

## II.

Our review of a grant of summary judgment is *de novo;* we use the same test as used by the district court. *Brooks v. Ameri-* *can Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, we must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings, and by affidavits, or by " 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

## III.

### A.

Safeco argues that the district court erred in not dismissing the case for lack of jurisdiction because Eatherly, a citizen of Tennessee, was realigned with Safeco in opposition to the City, another Tennessee citizen, thus destroying complete diversity. Safeco argues specifically that the district court abused its discretion in dismissing Eatherly from the suit because Eatherly was a necessary party.

■ Subject matter jurisdiction in this action was based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), which vests the federal district courts with jurisdiction in cases of sufficient value between "citizens of different States." *Id.* The court equates the citizenship of a natural person with his domicile, *Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir.1990), but deems a corporation to have the citizenship of its state of incorporation and its principal place of business, 28 U.S.C. § 1332(c)(1). A partnership, as an unincorporated association, has the citizen-

ship of each of its members. *Certain Interested Underwriters at Lloyd's v. Layne,* 26 F.3d 39 (6th Cir.1994).

■ This case began when Safeco, a Washington corporation, sought a declaratory judgment against Eatherly and the City—both citizens of Tennessee. Thus, on the face of the pleadings there was diversity between all of the plaintiffs and all of the defendants, *i.e.,* complete diversity. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). A plaintiff's alignment of the parties, however, is not determinative. In considering whether there is complete diversity, a federal court must look beyond the nominal designation of the parties in the pleadings and should realign the parties according to their real interests in the dispute. *Dawson v. Columbia Ave. Sav. Fund,* 197 U.S. 178, 180, 25 S.Ct. 420, 420–21, 49 L.Ed. 713 (1905). Realignment, then, may create or destroy diversity jurisdiction. *See, e.g., Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941); *Merchants' Cotton–Press & Storage Co. v. Insurance Co. of N. Am.,* 151 U.S. 368, 385, 14 S.Ct. 367, 372–73, 38 L.Ed. 195 (1894).

> It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings and arrange the parties according to their sides in the dispute." ... Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interests" ... exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit" ... and the "primary and controlling matter in dispute."

*Chase Nat'l Bank,* 314 U.S. at 69, 62 S.Ct. at 17.

The district court granted Eatherly's motion to realign the parties on the ground that Eatherly's interests in the litigation were identical to Safeco's. Realignment, however, jeopardized the district court's jurisdiction over the case. A case pitting Safeco and Eatherly against the City lacks complete diversity; complete diversity requires that no party share citizenship with any opposing party. To retain complete diversity, the district court decided to drop Eatherly from the case as a dispensable party. Safeco challenges the propriety of the district court's realignment of the parties and contends that Eatherly was a necessary party.

■ Rule 21 of the Federal Rules of Civil Procedure[1] permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19,[2] that is, the party to be dropped must not be a necessary party. *See, e.g., Fritz v. American Home Shield Corp.,* 751 F.2d 1152, 1154–55 (11th Cir.1985); *Publicker Indus., Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1068–69 (3d Cir.1979); *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 691–92 & n. 23 (4th Cir.1978); *Reed v. Robilio,* 376 F.2d 392, 394 (6th Cir. 1967); 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1685, at 457 (2d ed.1986). "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 2222–23, 104 L.Ed.2d 893 (1989).

Relying on *Kerr v. Compagnie De Ultramar,* 250 F.2d 860, 864 (2d Cir.1958), Safeco

1. Fed.R.Civ.P. 21 provides:

 Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

2. Fed.R.Civ.P. 19 provides, in part:

 **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

argues that Rule 21 pertains only to misjoined parties and does not authorize the dismissal of parties properly joined. *Kerr*, insofar as we are able to determine, is an aberration and stands alone. We decline to follow it. "Since it makes no difference whether Rule 15 or Rule 21 is used, most courts have not restricted the application of Rule 21 and continue to apply the rule to retain federal diversity jurisdiction over a case." 7 Wright, *supra* § 1685 at 458.

Next, Safeco argues that Eatherly is a necessary party—its presence in the action is required by Rule 19—and thus cannot be dropped from the suit merely to satisfy jurisdictional concerns. A party is "needed for just adjudication" under Rule 19 if: (1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations. Fed.R.Civ.P. 19(a)(1) & (2)(i)-(ii).

■ Ordinarily, we review the district court's conclusion as to whether a party is necessary to an action under Rule 19(a) for an abuse of discretion, *Keweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1346 (6th Cir.1993), but in this case we need not decide the issue. Assuming that Safeco is correct and that Eatherly was indeed a necessary party, we nonetheless conclude that the district court properly exercised jurisdiction over this case. Eatherly's presence in the suit would destroy the court's diversity jurisdiction over Safeco's declaratory judgment action. However, it is well recognized that where there is no basis for federal jurisdiction over the plaintiff's claim, a federal court may proceed to adjudicate a counterclaim that has an independent jurisdictional basis. 6 Wright, *supra* § 1414 at 112. Thus, notwithstanding the jurisdictional failure of the declaratory judgment action, the City's counterclaim against Safeco for breach of contract would nonetheless survive because there is diversity between the City and Safeco. And Eatherly is *not* a necessary party to the City's counterclaim because, under Tennessee law, "[a]s between the principal and surety, who are parties to a bond or note, all

are principals, and the creditor may sue one or all." 23 Tenn. Juris. *Suretyship* § 35 at 302 (1985) (citing *Morris v. McAnally*, 43 Tenn. (3 Cold.) 304, 305 (1866)).

**B.**

Safeco next argues that the district court erred in concluding that a binding contract existed between Eatherly and the City. Safeco maintains that EPA approval was a condition precedent to the existence of a contract, and the nonoccurrence of that condition (EPA never approved Eatherly for work on the project) prevented the formation of a contract.

■ In construing written contracts governed by Tennessee law, courts are to look not only to the language of the instrument, but must ascertain, if possible, the intention of the parties. *Real Estate Management, Inc. v. Giles*, 41 Tenn.App. 347, 293 S.W.2d 596, 599 (1956). For an agreement to be enforced as a contract, there must be mutual assent; one party must accept the other party's offer. An offer creates a power of acceptance in the offeree and may be revoked at the will of the offeror at any point before acceptance. Unless an acceptance mirrors the offeror's terms, neither omitting nor adding terms, it has no legal effect as an acceptance and operates as a rejection and a counter offer. *Canton Cotton Mills v. Bowman Overall Co.*, 149 Tenn. 18, 257 S.W. 398 (1924). "A conditional acceptance ... does not bind the offeror." *Lexington Housing Auth. v. Continental Casualty Co.*, 210 F.Supp. 732, 735 (W.D. Tenn.1962).

A nice distinction may be taken here between (1) a so-called acceptance by which the acceptor agrees to become immediately bound on a condition not named in the offer, and (2) an acceptance which adopts unequivocally the terms of the offer but states that it will not be effective until a certain contingency happens or fails to happen. In the first case there is a counter-offer and rejection of the original offer; in the second case there is no counter-offer, since there is no assent to enter into an immediate bargain. There is, so to speak, an acceptance in escrow, which is

not to take effect until the future. In the meantime, of course, neither party is bound and either may withdraw.

1 Samuel Williston, *A Treatise on the Law of Contracts* § 77A at 92 (3d ed.1957). Both of Professor Williston's examples illustrate how a *conditional acceptance* runs afoul of the mirror image rule: by deviating from the terms of the offer by supplying an additional condition, the acceptance is ineffective. In contrast, a *conditional contract* presents a different problem. A "conditional contract" is a contract, the very existence and performance of which depends on the happening of some contingency or condition expressly stated therein. *Buchanan v. Johnson,* 595 S.W.2d 827 (Tenn. Ct.App.1979); *Giles,* 293 S.W.2d at 599. The happening of some event is a prerequisite to liability or performance; that is, a party whose duty is conditioned on such an event is not required to perform unless the event has occurred. E. Allan Farnsworth, *Contracts* § 8.1 at 562 (2d ed. 1990). A provision may be a promise for one party *and* a condition for the other, as in an exchange where the second party's duty to pay is conditioned on the first party's performance of his promise. A provision may also be both a promise and a condition for the same party, as where a party is under a duty to reasonably ensure that a condition comes about, *e.g.,* where a party agrees to buy a house subject to obtaining financing.

Safeco argues that Eatherly had a conditional contract with the City inasmuch as the City accepted Eatherly's bid subject to the EPA's approval. Since that approval was not forthcoming, Safeco contends, Eatherly owed the City no contractual duty.

The City's invitation to bid specifically included certain instructions and general terms and conditions. The bid instructions explained that the project was funded in part with EPA funds and that the EPA required, among other things, that contractors on the project award a share of subcontracts to minority-owned businesses. The bid documents detailed the procedures that the successful bidder must follow in order to comply with the EPA's stringent requirements. The successful bidder was even required to submit documents directly to the EPA. It is apparent that the City was requiring bidders to make their bids (offers) subject to the EPA's minority business enterprise requirements. This was clearly understood by Eatherly; in its bid Eatherly agreed "to perform all WORK … in strict accordance with the CONTRACT DOCUMENTS." Thus, the condition of satisfying the EPA of compliance with its requirements was incorporated into the bid itself, and when the City accepted the bid, subject to EPA approval, a binding contract was formed. As Professor Corbin states, "An acceptance may be unconditional even though the acceptor makes a conditional promise." 1 Arthur L. Corbin, *Corbin on Contracts* § 3.29 at 464 (rev. ed. 1993).

> To accept, the offeree must assent unconditionally to the offer as made, but the fact that the offeree makes a conditional promise is not sufficient to show that his acceptance is conditional. The offer itself may either expressly or by implication propose that the offeree make a conditional promise as his part of the exchange. By assenting to such a proposal the offeree makes a conditional promise, but his acceptance is unconditional.

Restatement (Second) of Contracts § 59 cmt. b at 146 (1979). *United States v. National Optical Stores Co.,* 407 F.2d 759 (7th Cir. 1969), illustrates the rule. In that case, the federal government invited bids on surplus property and provided that the contract made by the acceptance of a bid could be avoided by either party if the Attorney General determined that the sale violated the antitrust laws. The government accepted the defendant's bid subject to credit approval and antitrust clearance. The court held that a contract existed because the defendant's bid adopted the conditions stated in the invitation and its bid clearly invited an acceptance by conditional promise. *Id.* at 761.

Since Eatherly's bid included the condition of EPA approval and was accepted by the City, both parties became bound in accordance with their mutual assent. The City accepted Eatherly's offer *unconditionally,* and thus this is a classic case of an unconditional acceptance of a conditional promise. A contract was formed when the City accepted Eatherly's offer on Eatherly's terms—one of those terms rendered the contract subject to EPA approval.

## C.

Having concluded that a contract was formed, we must next decide whether the district court erred in concluding that Eatherly breached the contract by withdrawing its bid after the City accepted it.

██ Ordinarily, an offer may be revoked at the will of the offeror anytime before it is accepted; a contractor is free to withdraw his bid on a construction project prior to an effective acceptance; acceptance, however, terminates the offeror's power to revoke. *Lexington Housing Auth.*, 210 F.Supp. at 734–35 (citing *Hoover Motor Express Co. v. Clements Paper Co.*, 193 Tenn. 6, 241 S.W.2d 851 (1951)). The provision of the contract requiring Eatherly to comply with the EPA's minority business enterprise requirements and seek EPA approval was, as we have said, both a promise and a condition for Eatherly. Eatherly was under a duty to seek EPA approval, and yet EPA approval was itself a condition to Eatherly's duty to perform. The EPA's approval, of course, depended upon Eatherly either complying with the agency's minority business enterprise requirements or demonstrating to the EPA that compliance was impracticable. Unless the EPA approved Eatherly, the City was under no duty to go forward with the contract. Eatherly, on the other hand, was obligated to seek EPA approval in good faith, since under Tennessee contract law, "standards of good faith and fair dealing [are] implied in every contract." *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 203 (6th Cir.1986); *cf. American City Bank v. Western Auto Supply Co.*, 631 S.W.2d 410, 418 (Tenn. Ct.App. 1981); Restatement (Second) of Contracts § 205. The issue of breach, then, centers on whether Eatherly exercised good faith in its attempts to comply with the EPA's requirements. If Eatherly made a good faith effort to comply with the EPA's regulations, and the EPA nonetheless withheld approval, Eatherly would have satisfied its obligations under the contract, and Eatherly would have no duty to perform further.

██ Exactly what constitutes a good faith effort is a difficult question that involves a factual determination. Eatherly did take some steps to comply with the EPA's guidelines, and there is some evidence that strict compliance was precluded by the paucity of minority businesses willing to participate in the project. On the other hand, some evidence suggests that Eatherly could have done more to solicit minority participation. The analysis is complicated by the question of whether Eatherly withdrew its bid too early and whether Eatherly should have made further attempts to obtain EPA approval. Of course, good faith does not require the doing of a futile act; but the issue of whether further efforts at compliance were futile needs to be decided by a trier of fact. Thus, on the issue of breach, there is clearly a genuine issue of material fact concerning Eatherly's good faith. Accordingly, the district court erred in granting summary judgment for the City on this issue.

## IV.

Therefore, we **AFFIRM** the district court's conclusion that a contract existed, we **REVERSE** the decision that Eatherly breached the contract as a matter of law, we **VACATE** the judgment and award of attorney fees in favor of the City, and we **RE-MAND** the case for further proceedings consistent with this opinion.