**SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff/Counter–Defendant,**

v.

**The CITY OF WHITE HOUSE, TENNESSEE, Defendant/Counter–Plaintiff.**

**Eatherly Construction Company, A Tennessee Partnership, Plaintiff/Intervenor,**

v.

**United States Environmental Protection Agency, Defendant/Intervenor.**

**No. 3:87–0883.**

United States District Court, M.D. Tennessee, Nashville Division.

July 28, 2000.

Alan Dale Johnson, Alfred H. Knight, Willis & Knight, Nashville, TN, for Plaintiff.

Robb S. Harvey, Waller, Lansden, Dortch & Davis, Peter Harwood Curry, Dinsmore & Shohl, LLP, Nashville, TN,

Charles E. Leggott, Richard S. Ugelow, Michael T. Kirkpatrick, Department of Justice, Civil Rights Division, Washington, DC. for Defendant.

Charles E. Leggott, Richard S. Ugelow, Michael T. Kirkpatrick, Department of Justice, Civil Rights Division, Washington, DC, for Environmental Protection Agency, intervenor defendant.

## MEMORANDUM

HAYNES, District Judge.

Plaintiff, Safeco Insurance Company of America ("Safeco"), filed this action for declaratory judgment under 28 U.S.C. § 2201, the Declaratory Judgment Act against the defendant City of White House, Tennessee, to determine Safeco's liability under a performance bond issued by Safeco to the Eatherly Construction Company ("Eatherly") to cover a contract for construction of sanitary sewer system for White House in 1987. In essence, Safeco asserts that White House initially awarded Eatherly this construction contract, but later, Eatherly withdrew its bid. White House contended that Eatherly's withdrawal of its bid constituted a breach of its contract with White House and increased the cost of this construction project. In White House's view, Eatherly failed to make a good-faith efforts to include minorities, women and small businesses to perform subcontracts on this project in accordance with the regulations of the Environmental Protection Agency (EPA) that funded most of the project. White House made a demand on Safeco's bond for the increased costs on this construction project.

In response to Safeco's action, White House filed a counterclaim against Safeco based upon this performance bond and asserted a cross-claim for breach of contract against Eatherly who was joined as a party.

In earlier proceedings[1], the Court concluded that Eatherly had a contract with White House, but found that material factual disputes existed requiring a trial on Eatherly's good faith efforts to comply with EPA regulations that were conditions of its contract with White House. The Court also dismissed Eatherly as a party to preserve diversity jurisdiction. Eatherly then filed a state court action against Safeco and White House. Despite Safeco's request to stay Eatherly's state court action, the Court granted White House's motion for summary judgment that Eatherly anticipatorily breached its contract with White House by withdrawing its bid. The Court awarded damages to White House in the amount of $352,847.08, plus prejudgment interest. The Sixth Circuit reversed and remanded the action concluding that Eatherly's good-faith efforts to comply with the EPA's regulations created material factual issues that had to be determined by a jury. *Safeco Insurance Co. v. City of White House, Tennessee,* 36 F.3d 540 (6th Cir.1994) (*Safeco I* ).

After remand, the United States Environmental Protection Agency ("EPA") was granted leave to intervene (Docket Entry Nos. 19 and 242) as well as Eatherly (Docket Entry Nos. 226 and 227). EPA sought intervention to defend the EPA regulations at issue. Eatherly asserted a claim in light of the Supreme Court decision, *Adarand Constructors Inc. v. Pena,* 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), that the EPA regulations at issue violated Equal Protection and Due Process Clauses of the Fourteenth Amendment. (Docket Entry No. 238). The action proceeded to trial and in sum, the jury concluded that Safeco failed to show that Eatherly acted in good-faith. The Court found, as a matter of law, that the EPA regulations did not require Eatherly to award contracts on the basis of race and that the EPA regulations, as applied, did not violate either Equal Protection or Due

Process Clause of the Fourteenth Amendment. The Court again awarded White House damages of $352,847.08, but did not award prejudgment interest. (Docket Entry Nos. 310 and 311).

In the second appeal, *Safeco II,* the Sixth Circuit vacated this Court's judgment and remanded for further proceedings, concluding that the burden of proof rested with White House, not Safeco on whether Eatherly breached its contract. 191 F.3d at 680–84. The Sixth Circuit also concluded that the District Court should have instructed the jury that if White House convinces the jury that Eatherly "had a good-faith belief that [Eatherly] could withdraw its bid after 90 days, the jury should disregard the 28 day period between the withdrawal of the bid and the deadline for White House to issue a notice to proceed." *Id.* at 684. Such a finding would relieve Eatherly of its duty to make a good-faith effort to comply with the EPA regulations at issue. *Id.* at 684. The Sixth Circuit further outlined the legal principles to evaluate the EPA regulations on the constitutional issues raised by Eatherly, but the Court did not resolve the constitutional issue. *Id.* at 689–92.

In *Safeco II,* the Sixth Circuit also addressed the issue of damages and expressed a concern that the District Court's damage award may have provided a windfall to White House that bears the burden of proving damages. 191 F.3d at 693. "Safeco offered evidence that EPA gave White House an additional grant of $375,811 .. due to the bid overrun. This grant suggests that the damages award gives a windfall to White House. Tennessee does not apply the collateral source rule to contract actions ... The district court erred by refusing to consider evidence that White House received a compensatory EPA grant." *Id.* (citations omitted).

1. This case history is derived from *Safeco Insurance Co. v. City of White House,* 191 F.3d 675 (6th Cir.1999) (*Safeco II* ) that is discussed *infra.*

The Sixth Circuit then summarized and set forth the issues to be addressed by this Court on remand:

> On remand, the district court should place the burden on White House to establish that it suffered damages and that an award would do no more than restore it to the position it would have occupied had Eatherly performed. This inquiry will require the parties to discuss, and the court to decide, the effect of the EPA grant and the EPA regulation that White House alleges will require White House to reimburse EPA if White House triumphs. See note 11 supra. Appellants also appeal the award of costs and attorney's fees, and White House cross-appeals the denial of pre-judgment interest. Because we remand for a new trial, and because resolution of those issues (if they rearise) will not require an inquiry similar to the one necessary for assessing damages, we express no opinion on the district court's rulings awarding costs and attorney's fees to White House and denying White House pre-judgment interest.

> \*   \*   \*   \*   \*   \*

> A jury will decide whether Eatherly satisfied its obligations to make good faith effort to comply with its contractual duties; specifically, the jury will determine whether Eatherly attempted in good-faith to obtain EPA approval. To assess Eatherly's good faith, the jury should limit its inquiry to the requirements known to Eatherly—namely, the contract provisions, any regulations incorporated in the contract, and the instructions conveyed to Eatherly by representatives of White House and EPA. Because White House asserts Eatherly breached White House bears the burden of proof. If Appellants convince the jury that Eatherly had a good faith belief that the contract permitted withdrawal after ninety days, Eatherly's actions after withdrawal would have no relevance for assessing its efforts to comply with EPA regulations.

> \*   \*   \*   \*   \*   \*

> If Appellants fail to convince the jury of Eatherly's good-faith belief in withdrawal, the jury may use the 28–day period as relevant evidence of Eatherly's failure to make a good-faith effort to obtain EPA approval. Regardless of the jury's decision, White House retains the burden of proof on breach, and Appellants should not have to prove that is would have been "futile" for Eatherly to obtain EPA approval in the 28–day period. Of course, if the jury finds that Eatherly undertook good-faith efforts to satisfy its contractual obligations, Appellants prevail and the constitutional and damages issues become moot.

> Second, the jury will decide how EPA applied the requirements to Eatherly. This finding of fact will require the jury also to consider Barron's subjective interpretation of the requirements. This finding of fact will involve at least three components: what EPA intended Eatherly to do to satisfy EPA, how Eatherly had to document its actions, and how EPA would evaluate whether Eatherly complied. Using this finding of fact, the district court will decide whether EPA's actions in applying the requirements were constitutional.

> If the jury finds that Eatherly breached, and the court finds that the EPA requirements did not violate the Constitution, the court should hold a hearing to assess damages against Eatherly. At the hearing, Appellants may present evidence of the EPA grant, and White House may argue the import of the EPA regulation that allegedly requires repayment of the grant.

*Id.* at 693–95.

Pending before the Court is Safeco's and Eatherly's motion for summary judgment (Docket Entry No. 350) asserting that (1) White House did not suffer any injury by reason of the subsequent EPA grant that

covered any increased cost of the construction project at issue; (2) that the EPA regulations are unconstitutional on their face because these regulations impose racial preferences that cannot be justified under constitutional standards; and (3) that the EPA administrator's withholding of her approval of Eatherly's bid was invalid because the administrator's decision lacked the standards for such a decision, as required by EPA regulations.

White House also filed a cross-motion for summary judgment (Docket Entry No. 353) solely on the issue of whether Safeco is entitled to a credit due to the EPA's supplemental grant. White House contends that it can pursue this action on behalf of the EPA and Eatherly cannot assert entitlement to a credit based upon the EPA's supplemental grant that covered the increased costs due to Eatherly's withdrawal of its bid.

The EPA opposes Safeco's and Eatherly's motion for summary judgment contending that the constitutionality of the EPA regulations cannot be decided on a motion for summary judgment in light of the Sixth Circuit mandate and that the EPA regulations are not subject to strict scrutiny because these EPA regulations require only recruitment and do not favor any individual or group based on race.

For the reasons set forth below, the Court concludes that White House has not presented sufficient proof to establish that White House suffered any injury or damage by reason of Eatherly's withdrawal of its bid. The undisputed fact is that the EPA's grant paid for any additional expense due to Eatherly's withdrawal of his bid. The EPA does not assert and in fact,

has waived any claim for damages for the amount of its supplemental grant and asserts that White House cannot make claim to its grant. Without any damages claim by the EPA, the Court concludes that issues of breaches of contract and the constitutional issues raised by the EPA regulations should not be addressed. The Court exercises its discretion to decline to entertain Safeco's claim for declaratory judgment as well as the other contract claims that in effect, would result only in a declaratory judgment, given the absence of a damage award and the judicial preference to decide constitutional issues only if necessary.

## A. FINDINGS OF FACT [2]

In January, 1987, White House advertised for bids on Contract III, Job No. 78–16 (the "Project"), for the construction of a sanitary sewer system for the city for which Eatherly submitted a bid. (Docket Entry Nos. 288 and 289, Stipulation at ¶ 1). On Thursday, March 12, 1987, the bids were opened. *Id.* at ¶ 2. Eatherly was the apparent low bidder with the total amount of $2,643,289.10. *Id.* The second low bidder for the Project was Moore Construction Company with its bid of $2,989,029.50. *Id.*

White House sent Eatherly a Notice of Award dated March 19, 1987, and Eatherly acknowledged receiving the notice. *Id.* at ¶ 3. On Wednesday, April 1, 1987, Raymond White, an engineer with Whit–Taylor–Walker, sent Robert Eartherly eight (8) sets of the contract documents for execution. *Id.* Robert Eatherly executed the eight (8) sets of contract documents, in-

---

**2.** Upon a motion for summary judgment the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. *Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir.1986.) *app.* 840 F.2d 16 (6th Cir.1988) (unpublished opinion). As will be discussed *infra,* upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, *Anderson v. Liberty Lobby,* 477 U.S.

242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). These findings are based upon the parties' stipulations (Docket Entry Nos. 288 and 289) as well as other undisputed facts. There are no material factual disputes on the damages issue and this section constitutes findings of fact under Fed. R.Civ.P. 56(d).

cluding the agreement, performance bond and payment bond. *Id.* Safeco also executed and issued the performance bond and payment bond. *Id.*

On April 9, 1987, Robert Eatherly returned to Raymond White the eight sets of contract documents which had been executed by Eatherly and Safeco. *Id.* at ¶ 7. White House executed the agreement of April 16, 1987. *Id.* On April 6, 1987 and on May 4, 1987, Jimmy Stacey an Eatherly employee wrote Nancy Barron, EPA's Minority Enterprise Project Officer for this region, about the EPA regulations on securing minority, women and disadvantaged firms as subcontractors on this project. *Id.* at ¶¶ 8 and 9.

On Monday, June 8, 1987, David Amonette, City attorney for White House, telephoned Robert Eatherly and spoke with him. *Id.* at ¶ 10. On June 9, 1987, Raymond White had delivered to Eatherly a copy of the set of the executed contract documents. *Id.* at ¶ 11. On June 10, 1987, City attorney David Amonette; Nancy Barron, the EPA employee; and Jimmy Stacey of Eatherly had a telephone conversation about the EPA regulations. *Id.* at ¶ 12.

On June 15, 1987, Angus Gillis, Eatherly's attorney had a telephone conversation with David Amonette, White House's attorney. *Id.* at ¶ 13. On Wednesday, June 17, 1987, a meeting was held at Eatherly office. *Id.* at ¶ 14. As of June 17, 1987, the EPA had not approved Eatherly's contract. *Id.* at ¶ 15.

On July 16, 1987, White House's mayor and board of aldermen awarded the contract to Moore Construction Company in the amount of $3,009,029.56. *Id.* at ¶ 16. White House then made a demand on Safeco for the increased costs of this project and Safeco filed this action for a declaration of its liability. *Id.* at ¶ 17.

The additional undisputed facts are that as a result of Eatherly's withdrawal of its bid, the increased construction costs for White House's sanitary systems contract was $352,847.08. (Docket Entry No. 352, Exhibit 1 at White House Response to Interrogatory No. 1).[3] On June 7, 1988, the EPA increased White House's grant for this project by $375,811. (Docket Entry No. 352, Eatherly's Statement of Undisputed Facts at Exhibit 2 thereto). In a letter dated June 7, 1988 to Charley E. Duty, Mayor of White House, Joseph R. Franzmathes on behalf of Greer C. Tidwell, EPA's Regional Administrator stated as follows:

RE: C470541–04–8, White House, Tennessee

Grant Increase and Time Extension

Dear Mayor Duty:

Your request for an increase in the City's Environmental Protection Agency (EPA) construction grant has been approved based on consideration of the supporting information submitted and the State's determination that the increase for your project is entitled to a priority.

We are pleased to make an additional grant offer of $375,811 which increases the City's grant to a total of $4,492,858 To accept this increase offer, please execute three copies of the enclosed Grant Amendment form within three (3) weeks from the date of receipt of this letter. When completed, return the original and two copies to the U.S. Environmental Protection Agency, Water Management Division, ATTN:

Administrative Support Unit, by certified mail.

If we may be of any further assistance, please do not hesitate to contact Steve Janes at (615) 741–0638.

*Id.*

To be sure, in response to Eatherly's motion for summary judgment, White

---

**3.** The Court has earlier determined that the measure of damages is the difference between Eatherly's bid and Moore's bid on this project (Docket Entry No. 212) and that this amount is $352,847.00 (Docket Entry No. 310, Memorandum p. 2).

House submitted the affidavit of Raymond White, a consulting engineer on this project. (Docket Entry No. 362). According to White who prepared White House's grant application on the construction project at issue, "[t]he EPA grant award was, and remains to this day, 78.7834% of the approved project costs.... The grant is still open and has remained open to allow for a final audit upon the conclusion of this litigation." *Id.* at ¶ 6. In his calculations, of the $365,280.46 in increased costs for this project, White has allocated $181,639.15 as "Local Share Increase" of the "Total Increase". The basis for the allocation is unexplained, but it appears to rest on White's assumption of a ratio of EPA's contribution to the original project. That assumption, however, is not in accord with White's cited ratio of the EPA's actual contribution on this project. In any event, Franzmathes' letter clearly states that the EPA grant of $375,811 was to cover the increased costs of the project and that fact remains undisputed. As noted earlier, the Court has determined that the measure of damages is the difference between Eatherly's bid and Moore's bid on this project (Docket Entry No. 212) and that amount is $352,847.00 (Docket Entry No. 310, Memorandum p. 2).

After the second remand, at a February 3, 2000 pretrial conference the Court inquired of the parties' counsel as to their respective positions on the damages issue. Of particular note, EPA's counsel asserted that the EPA would not pursue its interest in any recoupment of the original grant and that in EPA's view, White House is not entitled to an award of damages based upon the EPA supplement grant for the increased costs on this project at issue. EPA's only interest in this litigation is in the constitutionality of the EPA regulations at issue.

### B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed.1989). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in *Celotex*:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." *Martin v. Kelley,* 803 F.2d 236, 239, n. 4 (6th Cir.1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. *Sims v. Memphis Processors, Inc.,* 926 F.2d 524, 526 (6th Cir.1991) (quoting *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989) (quoting *Celotex* and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Liberty Lobby* ). Moreover, the Court of Appeals explained that

The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of

fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

*Street,* 886 F.2d at 1480 (cites omitted). See also *Hutt v. Gibson Fiber Glass Products,* 914 F.2d 790 (6th Cir.1990) ("A court deciding a motion for summary judgment must determine whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting *Liberty Lobby.*)

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, *summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*

\* \* \* \* \* \*

Progressing to the specific issue in this case, we are convinced that *the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.* If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, *the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by*

*a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.*

*Liberty Lobby,* 477 U.S. at 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d at 211–212, 214 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

*Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." *Duchon v. Cajon Company,* 791 F.2d 43, 46 (6th Cir.1986) *app.* 840 F.2d 16 (6th Cir.1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to

point out the location of." *Webster's Third New InterNational Dictionary* (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

*InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989) *cert. denied* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Pursuant to the Sixth Circuit second remand and as instructed, the Court addresses first the issue of damages. In *Safeco II,* the Sixth Circuit expressly raised the issue of damages and suggested that White House may be pursuing a "windfall" in light of the EPA supplemental grant that covered any increased costs for this construction project due to Eatherly's withdrawal of its bid.

The district court may have provided a windfall for White House, which bears the burden of proving damages. Safeco offered evidence that EPA gave White House an additional grant of $375,811 "due to a bid overrun." This grant sug-

gests that the damages award gives a windfall to White House. Tennessee does not apply the collateral source rule to contract actions. See *Drewry v. Continental Cas. Co.*, No. 03A01–9111–CH417, 1992 WL 60876, at *5–6 (Tenn. Ct.App. Mar. 30, 1992); cf. *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 873–74 (9th Cir.1986) (concluding that Idaho would not apply the collateral source rule to preclude offsets for EPA grants for an Idaho waste treatment project), *cert. denied sub nom., City of Twin Falls, Idaho v. Envirotech Corp.*, 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987). The district court erred by refusing to consider evidence that White House received a compensatory EPA grant.

*On remand, the district court should place the burden on White House to establish that it suffered damages and that an award would do no more than restore it to the position it would have occupied had Eatherly performed. This inquiry will require the parties to discuss, and the court to decide, the effect of the EPA grant and the EPA regulation that White House alleges will requires White House to reimburse EPA if White House triumphs.* See note 11 supra. Appellants also appeal the award of costs and attorney's fees, and White House cross-appeals the denial of pre-judgment interest. Because we remand for a new trial, and because resolution of those issues (if they rearise) will not require an inquiry similar to the one necessary for assessing damages, we express no opinion on the district court's rulings awarding costs and attorney's fees to White House and denying White House pre-judgment interest.

191 F.3d at 693–94 (emphasis added and footnote omitted).

██ Upon a motion for summary judgment, White House must present sufficient evidence under the governing law to support a claim for damages. The Sixth Circuit has addressed Tennessee law on proof of damages in breach of contract actions stating that the governing principle is to compensate for damages actually incurred "by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms, not to provide a windfall for the plaintiff. The plaintiff bears the burden of proving damages, and without adequate proof, there can be no award of damages in any amount." *Grantham and Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 601 (6th Cir.1987).

As to EPA grants, the pertinent regulations governing such grants provide as follows:

*Refunds, rebates, credits, etc.* The Federal share of any refunds, rebates, credits or other amounts (including interest) that accrue to or are received by the grantee of the project, and that are properly allocable to costs for which the grantee has been paid under a grant, must be credited to the current State allotment or paid to the United States. Reasonable expenses incurred by the grantee for the purpose of securing such refunds, rebates, credits, or other amounts shall be allowable under the grant when approved by the Regional Administrator.

40 C.F.R. § 35.945(d).

In an action involving the Federal Highway Act and its grants to States for construction of highway projects, the Sixth Circuit ruled that "the federal share was not an outright "gift" with no strings attached. It was paid to the State for particular purposes subject to definite conditions." *State ex rel. Leech v. Dole*, 749 F.2d 331, 336 (6th Cir.1984). The Sixth Circuit mandated a recovery of federal funds to the Federal Highway Administration. *Id.* at 337.

██ As applied here, the undisputed fact is that the EPA supplemental grant covered any increased costs due to the withdrawal of Eatherly's bid on the White House project. Under *Leech*, these mo-

nies are recoverable by the EPA. White House does not offer any evidence or law that the EPA's grant can serve as the basis for a recovery by White House. Moreover, the EPA is now a named party and can assert its independent right to these grant funds, but has elected not to do so. In a word, the Court concludes that White House has not sustain any compensable injury due to Eatherly's withdrawal of its bid.

White's affidavit and his characterization of the status of the EPA grant does not create a material issue of fact. First, White's affidavit does not identify the basis for the specific damage to White House, as in required on this type of motion. Second, White House cannot by affidavit attempt to create a material dispute with Tidwell's letter that EPA's supplemental grant was to cover the increased actual costs for the project without any reference to any obligation of White House other than acceptance of the grant. Third, although White House argues that is asserting EPA's claim for damages, EPA is a party and EPA's counsel has stated EPA's position not pursue recovery of this grant. On a motion for summary judgment, White House must demonstrate the factual and legal bases for its claim. As in *Leech,* the status of this grant is an accounting matter between White House and the EPA, not the basis for a damage award under Tennessee law to White House for any alleged breach of contract by Eatherly that increased EPA's costs.

■ There is also not any showing of a basis for any award of attorney's fees to White House against Eatherly. Under Tennessee law, without a contract the Court cannot award White House any attorney's fees. See *State ex rel. Orr v. Thomas,* 585 S.W.2d 606, 607 (Tenn.1979); *Marshall v. Sevier County,* 639 S.W.2d 440, 443 (1982) and authorities cited therein. To be sure, attorney's fees are recoverable under a bond, but only when the city prevails and there is a judicial determination of default or judgment. See

*Harpeth Valley Utilities Dist. v. Due,* 225 Tenn. 181, 465 S.W.2d 353, 355 (1971); *Thayer v. Wright Co.,* 50 Tenn.App. 515, 530, 362 S.W.2d 805 (1961). In an earlier proceeding, this Court awarded White House attorney's fees, but did so only with the conclusion that Eatherly breached its contract with White House.

... under the language of the Performance Bond plaintiff stipulated that it would fully indemnify and hold defendant harmless for *all costs and damages incurred as a result of the Principal (Eatherly)'s breach of contract.* Tennessee courts have interpreted such broad language in a bond to *encompass attorneys' fees. See, e.g. Harpeth Valley Utilities Dist. v. Due,* 225 Tenn. 181, 465 S.W.2d 353 (1971); *City of Bristol v. Bostwick,* 146 Tenn. 205, 240 S.W. 774 (1921). The Court concludes that defendant is entitled to attorneys' fees under the Performance Bond.

(Docket Entry No. 177) (emphasis added).

Here, with the judicial determination of a lack of injury to White House and EPA's waiver of any damages claim, the Court does not need to consider or determine the issue of fault or any possible breach of contract. Thus, there is not a predicate for any award of attorney's fees and costs.

■ As to Safeco's claim for a declaratory judgment, the award of declaratory judgment is a discretionary remedy. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The factors to be considered is whether one party can "invoke or coerce a remedy ... i.e. a suit for damages or if the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision." *Tempco Electric Heater Corp. v. Omega Engineering,* 819 F.2d 746, 749 (7th Cir.1987).

■ Here, the only party with a damage claim is the EPA that has waived any damages claim for its supplement grant. To decide the other issues of any breach,

the Court would be rendering a declaratory judgment. To decide the issue of breach of contract necessarily requires a decision on the constitutional defense to the breach. The Court concludes that it is unfair to go further to reach a decision on the constitutionality of the EPA regulations, because courts follow the general rule that constitutional issues should be resolved, only if necessary. *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"). *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) ("It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case") (quoting *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905)).

Without a compensable injury to White House, the Court concludes that White House's cross claim for damages for Eatherly's alleged breach of contract should be dismissed. Given EPA's waiver of its damages based upon its supplemental grant and with the absence of any damages claims, the Court elects not to issue a declaratory judgment on the constitutional issues and other claims raised by the parties. This action should be dismissed.